*Chester CURTIS and Janvey Thomas*
Plaintiffs
*vs.*
*AMCO INSURANCE CO., a member of Nationwide Insurance,*
Defendants

In the District Court of the Navajo Nation
Judicial District of Shiprock

No. SR-CV-125-04

March 29, 2005

## DISMISSAL FOR LACK OF JURISDICTION

THIS MATTER IS before this Court on a Complaint for Declaratory Relief on an Auto Insurance Policy purchased by Janvey Thomas, who is a resident of Denver, Colorado. Janvey Thomas purchased the auto policy on March 27, 2002 in Durango, Colorado. On April 15, 2002, Chester Curtis was driving Plaintiffs 1996 Chevrolet Camaro, when he was involved in an auto accident, at Milepost 18, on Highway 36 in San Juan County, State of New Mexico. This Court is asked to interpret the insurance contract which Plaintiff J. Thomas entered off the reservation, and that this court has jurisdiction over the matter.

Defendants contend Janvey Thomas, is a full time resident of Denver, Colorado, and she was never a "resident" of the Navajo Nation. That Janvey Thomas's vehicle is registered with the State of Colorado and that the Auto Insurance policy was purchased and the dealings was entirely made off-reservation. That, this court for the purpose of Jurisdiction, should find plaintiff Janvey Thomas is not a resident of the Navajo Nation, thus that, this court does not have jurisdiction to hear her case.

Defendant argues, that this court does not jurisdiction to hear this case, pursuant to DENNY V. BROWN, 1 NT. 292, 293, Window Rock District Court, 1989 where in that case, Plaintiff Denny claimed entitlement to proceeds from life insurance of decedent, Morgan Denny, Sr. by virtue of being spouse of M.D, Sr. Defendant in that case. The Court decided that plaintiff was not a resident of the Navajo Nation. The decision of the Window Rock District Court, for purposes of Civil jurisdiction, in that case, found (Brown) also resided off the Navajo Reservation nine months prior to filing her action and all of the dealings occurred off the reservation. The District Court in DENNY, provided guidance as the case involved an insurance policy. The insurance policy, in that case was purchased by decedent; M. Denny, Sr. while he was employed and living on Navajo Nation. The Employment Benefit was offered through his on-reservation employer. The policy at issue in Denny arose directly from his employment. For these reasons, Denny did not prevail in her case.

The facts of this case are different from Denny, that Plaintiff, J. Thomas resided in Denver, Colorado, her vehicle was registered in Colorado and she purchased the auto insurance in Durango, Colorado and that, all of the dealing occurred out the Navajo Nation. In an undated Affidavit, regarding a case, CV-2002- 1091-6, which is not this court's docket, plaintiff attested, she resided on the Navajo Reservation at Chester Curtis's residence and also at 900 South Quince Street, B-19, in Denver, Colorado on a 50%- 50% basis before the April 15, 2002 auto accident. On or about August 19, 2002 during Oral Examination by a Zachary S. Rigdon, Attorney for National Casualty Insurance. Comparing conducting the examination, plaintiff, at Page 23, line #25 to Page 24, line #7 considered Colorado, as her permanent residence.

Plaintiff's residency claim and evidence presented so far, is all on an Affidavit that she resides on Navajo Nation. It is somewhat difficult to weigh plaintiff's residency on the Navajo Nation with only a written affidavit. Plaintiff wants this court to accept her contention that she lives on the Navajo Nation. In order to consider whether this court has jurisdiction in this matter. This court uses Navajo Custom and Tradition in deciding her claim, and does so, as a matter of law. *Apache v. Republic Nat'l Life Insurance*, 3 NAV. R. 145,147 (W.R. Dist. Ct. 1982.) The Navajo people do not refer to their mode of living as a way of life; it is the way of life. At the center of the Navajo world is their shelter, the Hogan. There are two types of hogans; Male hogan is the forked poles hogan and the Female

hogan is the six sided pole dwelling with a dirt dome. A fire place is always part of the hogan and is located at the center of the hogan. The Navajo hogan is more than just a place to eat and sleep and the concept of it as a "home" bears little resemblance to a white person's attitude towards his dwelling place. The hogan is a gift of the gods and as such occupies a place in the sacred world. The first hogans were built by the Holy People of turquoise, white shell, jet and abalone shell. The round hogan is symbolic of the sun and its door face east, so that the first thing that a Navajo sees in the morning is the rising sun ... Father Sun, one of the most revered of the Navajo deities. Construction of a hogan is a community affair and once completed, the new hogan is consecrated with a Blessing Way rite, whereby the Holy People are asked to "let this place be happy."

Even the positions of persons and objects within the hogan are prescribed in the legends: the south side of the hogan belongs to the women, the north to the men. The male head of the family, and any distinguished visitors, sits on the west side facing the doorway. The placement of all persons and seating arrangement during ceremonials or other important events are prescribed in considerable place. The Hogan song is sung before the set ceremony is performed. (The Book of the Navajo, Raymond Friday Locke, 5th Ed.) There is more to it than just claiming residency on Navajo Nation land and 50% residency is not the way of the Navajos. A Navajo claiming to reside on the Navajo Reservation must have a hogan located on Navajo land, to reside in and live the way of Navajos. Recently, and for insurance matters coming before the courts, the Navajo Supreme Court issued an opinion requiring the District Courts to provide detailed factual findings is required in cases involving insurance coverage, where insurers contest subject matter jurisdiction. The Navajo Nation Supreme Court in *Clark v. Allen*, 7 Nav. R. 422, 423 (1999) provided "crucial" questions that needed to be answered. (1.) The issue of whether the State Highway is like that in United States Supreme Court case, *Strate v. A-1 Contractors*, (citation omitted.) (2.) Do Insurance companies and their agents come onto the Navajo Nation or do insurance agents come onto Navajo Nation to further its business? (3.) What are the extent of Insurance Company's contacts with the Navajo Nation when negotiating appellant's claims? (4.) Is a bad faith insurance settlement claim a separate tort action independent of the underlying contract and the accident? Here, Highway 36 is a tribal road and not a State road. Defendant AMCO does not do business on the Navajo Nation or send agents onto it and AMCO does not have significant contacts with the Navajo Nation.

IT IS THEREFORE the Findings of this court by examination of *Denny v. Brown*, 1 NT. 292, 293 (1989) and, in accordance with Navajo custom and tradition, that plaintiff Janvey Thomas' claim of 50% residency is not sufficient; thereby, the court finds she is not a resident of the Navajo Nation.

IT IS FURTHER, the Findings of this court that Plaintiff did not satisfy all "crucial" questions of *Clark v. Allen* case.

IT IS THIS COURT'S Interpretation that the only action at issue, is the insurance policy contract that was entered into off the reservation and with respect to that policy that this Court does not have jurisdiction and such, can not grant jurisdiction to plaintiff.